FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 21, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GERALD W., <br><br>Plaintiff, <br><br>v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>Defendant. | No. 1:18-CV-03134-JTR <br><br> ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney D. James Tree represents Gerald W. (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on August 26, 2014, alleging disability since

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

August 1, 2014, due to seizures. Tr. 85, 211-25, 239. The applications were denied initially and upon reconsideration. Tr. 113-16, 119-23. Administrative Law Judge (ALJ) Glenn Meyers held a hearing on May 16, 2017, Tr. 34-82, and issued an unfavorable decision on October 3, 2017, Tr. 15-27. The Appeals Council denied Plaintiff's request for review on June 15, 2018. Tr. 1-6. The ALJ's October 2017 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 26, 2018. ECF No. 1, 4.

## STATEMENT OF FACTS

Plaintiff was born in 1985 and was 28 years old as of the alleged onset date. Tr. 25. He graduated from high school. Tr. 362. His primary work history was as a janitor at a school and working at a saw mill. Tr. 54-61, 77.

Plaintiff began having seizures in the fifth grade. Tr. 343. In 2007 he underwent a left temporal lobectomy with left corticography to treat his medically intractable seizures. Tr. 388. In his application materials and at the hearing, Plaintiff reported that he continued to experience a few grand mal seizures each year and had small seizures a few times per week. Tr. 67, 255, 361, 498. He has never moved out of his mother's home or lived independently. Tr. 72, 361.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On October 3, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2014, the alleged onset date. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: epilepsy/seizure disorder and neurocognitive disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform work at all exertional levels with the following non-exertional limitations:

> The claimant is capable of unskilled, repetitive, routine tasks in 2 hour increments. He can have superficial, incidental contact with the public. He is capable of working in proximity to but not in coordination with coworkers. He can have occasional contact with supervisors. He cannot work at any height or in close proximity to hazardous conditions.

Tr. 19.

At step four, the ALJ found Plaintiff was not able to perform his past relevant work as a janitor or lumber straightener. Tr. 25.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, including the jobs of industrial cleaner, kitchen helper, and laundry worker II. Tr. 25-26.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from August 1, 2014, the alleged onset date, through the date of the ALJ's decision, October 3, 2017. Tr. 26-27.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) failing to allow the claim when the RFC compelled a finding of disability; (2) not properly assessing Listing 11.02B; (3) improperly rejecting the opinion evidence;[1] (4) not fully crediting Plaintiff's subjective complaints; and (5) failing to order an updated neuropsychological evaluation.

**DISCUSSION**[2]

**1.       Medical opinion evidence**

Plaintiff argues the ALJ erred by failing to properly consider the medical opinion evidence of record. ECF No. 14 at 7-13. Plaintiff specifically asserts the ALJ erred by assigning significant weight to Dr. Sawyer's opinion, but then failing to adopt all assessed limitations; and in giving only some or little weight to Dr. Cline and Dr. Mitchell. *Id.*

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources:  treating physicians, physicians who examine

---

[1] For clarity, the Court has addressed the assessment of the medical opinion evidence and the third party evidence under separate headings.

[2] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830.

In weighing the medical opinion evidence, an ALJ must make findings setting forth specific, legitimate reasons for the assessment that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must also set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ).

**A. Dr. Sawyer**

Plaintiff attended a consultative psychological exam with Dr. Greg Sawyer in March 2015. Tr. 342-48. Dr. Sawyer reviewed Plaintiff's function report and seizure questionnaire, and conducted a clinical interview and mental status exam. *Id.* He concluded that Plaintiff did not have a psychiatric impairment, but clearly had a memory impairment that appeared to be neurological in nature. Tr. 347. In terms of functional assessment, Dr. Sawyer concluded Plaintiff would not have difficulty managing funds, performing simple and repetitive tasks, or engaging in effective social interactions. Tr. 348. However, Dr. Sawyer opined Plaintiff would have difficulty in the following areas: performing detailed and complex tasks; accepting instructions from supervisors; understanding, carrying out, and remembering one or two-step instructions; performing work activities on a consistent basis without special or additional instruction; sustaining concentration and persisting in work-related activity at a reasonable pace; maintaining regular

attendance in the workplace; completing a normal workday or workweek without interruptions; and dealing with the usual stresses encountered in the workplace. *Id.*

The ALJ gave significant weight to Dr. Sawyer's opinion that Plaintiff was able to perform simple and repetitive tasks. Tr. 23. He gave lesser weight to the portions of the opinion that Plaintiff did not have difficulty with social interaction and would have difficulty maintaining regular attendance. *Id.* With respect to attendance, the ALJ stated: "as he commented, the claimant has experienced difficulty finding a job because his car is broken. The inference is that with reliable transportation the claimant can work." Tr. 23-24.

Plaintiff argues the ALJ erred in failing to offer any reasons for not crediting the remainder of the opinion. ECF No. 14 at 8-11. Defendant asserts that the ALJ was not required to offer any further explanation because Dr. Sawyer did not assess any specific work-related limitations, and thus the rest of the opinion was not significant or probative. ECF No. 15 at 11-12.

An ALJ is required to explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, the ALJ addressed portions of Dr. Sawyer's opinion, and gave some significant weight, and others lesser weight. By not including limitations in the RFC to account for all of Dr. Sawyer's opinion, the ALJ effectively rejected portions of the opinion. This rejection was not explained. The Court finds the remainder of Dr. Sawyer's opinion to be significant and probative of Plaintiff's ability to work, and thus must be addressed by the ALJ on remand.

**B. Drs. Cline and Mitchell**

Plaintiff contends the ALJ failed to give valid reasons for rejecting the opinions from Dr. Cline and Dr. Mitchell. ECF No. 14 at 11-13.

Dr. Rebecca Cline conducted an exam for the Department of Social and Human Services in April 2016. Tr. 361-65. She diagnosed Plaintiff with an unspecified neurocognitive disorder, possibly due to his seizure disorder, and an

unspecified depressive disorder. Tr. 362. She noted mild vague symptoms of depression and moderate to marked communication problems. *Id.* In terms of functional limitations, she found moderate limitations in Plaintiff's ability to: understand, remember, and persist in tasks by following detailed instructions; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; ask simple questions or request assistance; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently. Tr. 363. She rated the overall severity of Plaintiff's impairments as moderate.[3] *Id.*

Two weeks later, Dr. Melanie Mitchell reviewed Dr. Cline's report, along with an exam done in 2005, and agreed with the diagnoses and functional limitations assessed by Dr. Cline. Tr. 366. Dr. Mitchell indicated that the diagnosis was supported by the available objective medical evidence and the narrative report supported the functional limitations. *Id.* Based on her review of the additional records, Dr. Mitchell concluded Plaintiff was likely to remain impaired for at least 24 months, "due to chronic mental health impairments (cognitive in particular), very poor prognosis for gainful employment and likely need for long-term resources." *Id.*

The ALJ gave Dr. Cline's opinion some weight, but gave the following reasons for not giving it more weight: (1) the exam contained inconsistent test scores regarding malingering; (2) Dr. Cline stated Plaintiff might be impaired for just 6 months; and (3) she did not address how Plaintiff had previously been able to perform his past relevant work. Tr. 24. The ALJ gave Dr. Mitchell's opinion little weight because Plaintiff had sustained substantial gainful employment in the past

---

[3] The form Dr. Cline completed defined "moderate" as "significant limits on the ability to perform one or more basic work activity." Tr. 363.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 8

and because Dr. Mitchell did not examine Plaintiff and relied partly on Dr. Cline's opinion. *Id.* The ALJ's rejections are not based on substantial evidence.

Dr. Cline did not indicate that the validity testing she administered was inconsistent. Tr. 362. She stated: "Claimant completed a Rey at the outset of today's assessment. His score of 8 indicated a below average level of effort and did not provide necessary evidence of non-malingering, so he was also given a TOMM. His score of 48 on the first trial indicates an excellent level of effort and provides evidence of non-malingering at this time." *Id.* Dr. Cline expressed no concerns with respect to validity and arrived at the conclusions she did based on the evidence she obtained. Tr. 361-65. Furthermore, Dr. Mitchell indicated Dr. Cline's assessment was supported by the objective medical evidence and Dr. Cline's narrative report. Tr. 366. The ALJ's interpretation is not supported by substantial evidence.

The ALJ failed to accurately discuss Dr. Cline's comments on duration. Dr. Cline's full statement was: "6 [months], but possibly much longer." Tr. 364. The ALJ also failed to acknowledge at all Dr. Mitchell's opinion that the duration of Plaintiff's impairment would be much longer. Tr. 24.

Finally, Plaintiff last worked in 2013. Tr. 39, 304. His alleged onset date is August 1, 2014 due to worsening of his condition after he stopped working. Tr. 39-40. An ability to work more than three years prior to Dr. Cline's exam, before Plaintiff was alleging disability, is not relevant to the reliability of the assessment.

The ALJ failed to offer legally sufficient reasons for disregarding these opinions. On remand, the ALJ shall reassess the entire medical record, and reformulate the RFC.

**2.     Third party Gaylynn Waheneka**

Plaintiff argues the ALJ erred in his partial rejection of Plaintiff's mother's testimony. ECF No. 14 at 13-15.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). An ALJ must give "germane" reasons to discount evidence from these "other sources." *Dodrill*, 12 F.3d at 919.

The ALJ gave "some weight" to Ms. Waheneka's testimony, but stated "the persuasiveness of her opinion is reduced however, because although she opines that her son has difficulty remembering how to do things, this does not explain how he was able to keep 2 paid jobs for substantial periods of time." Tr. 24.

As noted above, a claimant's ability to work prior to his alleged onset date, barring more analysis, is not relevant to his ability to work after he alleges his disability began. On remand, the ALJ will reconsider all evidence in reassessing the RFC.

### 3. Plaintiff's subjective complaints

Plaintiff contends the ALJ erred by improperly rejecting his subjective complaints. ECF No. 14 at 15-20.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are

insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 22. The ALJ listed the following reasons for finding Plaintiff's subjective complaints not persuasive in this case: (1) the evidence was inconsistent about whether, and to what extent, Plaintiff continued to have seizures; (2) Plaintiff alleged difficulty understanding people when they talk to him, but was able to answer questions throughout his hearing without notable difficulty; (3) Plaintiff continued to drive despite alleging a disabling seizure disorder; and (4) Plaintiff testified he would be able to perform his prior jobs if they were offered to him. Tr. 22-23.

This matter is being remanded for additional proceedings to remedy errors in the ALJ's evaluation of the medical opinion evidence of record. The ALJ shall also evaluate Plaintiff's statements and testimony with the benefit of the reconsidered medical evidence. The ALJ shall reassess what statements, if any, are not consistent with the medical evidence and other evidence in the record, and what specific evidence undermines those statements.

**4. Step three findings**

Plaintiff argues the ALJ erred in the step three determination by failing to evaluate the specific requirements of Listing 11.02B and making only boilerplate findings that the listing was not met. ECF No. 14 at 6-7.

A claimant is considered disabled at step three when his impairment meets the durational requirement and his impairments meet or equal a listed impairment in Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the

relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir.1990); *Lewis*, 236 F.3d at 512.

At step three the ALJ found "the severity of the claimant's mental impairment does not meet or medically equal the criteria of any of the listings in 11.00 and/or 12.00." Tr. 18. The ALJ went on to discuss the detailed requirements of Listing 12.00 and the relevant "B criteria," but made no findings as to why Listing 11.02 for epilepsy was not satisfied. Tr. 18-19.

To meet Listing 11.02B, an individual must have "epilepsy, documented by a detailed description of a typical seizure and characterized by . . . (B) dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. Part 404, Subpart P, Appendix 1, 11.02B. Dyscognitive seizures "are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." *Id.* at 11.00H1b. Adherence to prescribed treatment means the individual takes medication or follows other treatment procedures as prescribed by a physician for three consecutive months. *Id.* at 11.00C.

The record fails to establish any plausible argument that the listing was met or equaled. *Lewis*, 236 F.3d at 514. The record contains no detailed description of Plaintiff's typical seizure activity approaching the definition of dyscognitive seizures in the listing. Plaintiff has described his seizures as feeling faint or dizzy, or as if there is a magnet in his brain. Tr. 44-45, 498. He has not indicated that

these "small" seizures result in any alteration of consciousness. *Id.* Furthermore, Plaintiff's testimony regarding the frequency of these seizures does not reach listing level. Tr. 45. Finally, the consultative examiner indicated medication was effective. Tr. 343 ("He is now taking Dilantin and Phenytoin and his seizures appear to be generally controlled.").[4] Due to the lack of evidence supporting a finding that Listing 11.02B is met or equaled, the ALJ did not err at step three.

**5. Step five findings**

Plaintiff asserts the ALJ's RFC determination and the vocational expert testimony compel a finding of disability at step five due to the limitation on supervisor contact. ECF No. 14 at 5-6. He argues the vocational expert testified that training periods often require more than occasional contact with supervisors, which exceeds Plaintiff's RFC, thus rendering him unemployable. *Id.*

Plaintiff's argument is without merit. The vocational expert's testimony was that an individual limited to the established RFC, including occasional supervisor contact, would be capable of performing the jobs identified at step five. Tr. 77-78.

---

[4] The record also indicates that Plaintiff's medication use has not been consistent. *See* Tr. 241 (Plaintiff listed no current medications on his Adult Disability Report), 252 (Plaintiff listed Phenytoin and Dilantin as medications, but indicated he was not currently taking them), 266 (Plaintiff indicated taking no medications), 276 (Plaintiff's mother indicated he used to take medication but it caused unusual behavior), 361 (Plaintiff told Dr. Cline he was not taking medication for his seizures), 498-500 (treating neurologist stated "Patient has been non-compliant with medications since surgery" and began a trial of Keppra); *but see* 256 (Plaintiff stated he was not currently taking any medication, then immediately below on the same form stated he took them every day and had been doing so for seven years), 284 (Plaintiff stated he was currently taking Dilantin and Depakote); 306 (Plaintiff stated he was currently taking Phenytoin and Dilantin).

Her testimony regarding training periods was in response to Plaintiff's representative's question regarding an individual that would have difficulty communicating and would need three times the length of a normal training period:

> VE: I believe that might be problematic, depending on the employer and their tolerance for repeating. Within the training period it is common to have up to frequent contact with the applicant and have repeated instructions. If after the training period is done, if they're continuing to need training, then there's a more likelihood that that employer would likely terminate that worker.

Tr. 80. The vocational expert's testimony does not establish that the RFC compels a finding of disability.

### 6. Updated consultative exam

Plaintiff argues the ALJ erred in failing to order an updated neuro-psychological evaluation. ECF No. 14 at 20-21. Plaintiff asserts that since the last exam was done over a decade before the hearing and prior to Plaintiff's brain surgery, further development of the record was necessary. *Id.*

An ALJ has a duty to ensure that the administrative record is fully and fairly developed. 20 C.F.R. §§ 404.1512(b), 416.912(b); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). Under certain circumstances, an ALJ may order a consultative exam, such as when a medical source cannot or will not provide sufficient medical evidence about a claimant's condition. 20 C.F.R. §§ 404.1517, 416.917. However, the obligation to develop the record is not unlimited, and "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

While Dr. Cline stated that intellectual and cognitive testing would be useful to determine the *cause* of Plaintiff's communication difficulties, she did not indicate that she was unable to offer an opinion on his functional abilities based on

the assessment she performed. Tr. 364. Similarly, Dr. Sawyer indicated that Plaintiff's condition was likely more neurological than psychological, but still offered a functional assessment based on the exam. Tr. 347. The evidence here was not ambiguous or inadequate to allow the ALJ to evaluate the claim. Therefore, the ALJ did not err in denying Plaintiff's request for additional testing.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand a case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's RFC determination is not supported by substantial evidence and must be reevaluated. On remand, the ALJ shall reassess the medical evidence, specifically the opinions of Drs. Sawyer, Cline, and Mitchell. The ALJ shall reevaluate Plaintiff's subjective complaints and the testimony of the third-party, formulate a new RFC, obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED May 21, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE